873 P.2d 770

**In the Matter of the Tax Appeal of
BISHOP SQUARE ASSOCIATES,
Appellant,**

v.

**CITY AND COUNTY OF HONOLULU,
Appellee.**

No. 16997.

Supreme Court of Hawai'i.

May 2, 1994.

As Amended May 27, 1994.

Robert B. Bunn (James H. Ashford, with him on the briefs, of Cades Schutte Fleming & Wright), Honolulu, for appellant.

T. Lowell Wolf, Deputy Corp. Counsel, City and County of Honolulu, Honolulu, for appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Appellant Bishop Square Associates (BSA) appealed Appellee City and County of Honolulu's (City) tax assessment of BSA's real property to the Tax Appeal Court pursuant to Hawai'i Revised Statutes (HRS) § 232–16 (Supp.1992)[1] on the grounds that: (1) the City assessor valued the land at more than 110 percent of its fair market value; and (2) there was a lack of uniformity or equality due to the illegality of the methods used or an error in the application of the valuation methods in violation of Revised Ordinances of Honolulu (ROH) § 8–12.3 (1990).

The Tax Appeal Court disagreed with BSA and concluded that, although the land was overassessed, because it lacked jurisdiction, the court was powerless to correct the assessment.

BSA appeals the decision of the Tax Appeal Court contending that, because it appealed only the land assessment, it was entitled to relief once the court determined that the city's land assessment value exceeded the fair market value of the land by more than ten percent. Although we disagree with

BSA's rationale, we nevertheless hold that the Tax Appeal Court erred when it refused, on jurisdictional grounds, to enter a judgment determining that the city's assessed value of the property exceeded the fair market value of the property by more than ten percent based upon all the evidence in the record.

Accordingly, we vacate the judgment of the Tax Appeal Court and remand to the Tax Appeal Court for entry of an order reducing the fair market value of the land based upon the evidence adduced at trial.

## BACKGROUND

This appeal involves consolidated real property tax appeals for the years 1991–92 and 1992–93, concerning the City's valuation of land on the property known as "Bishop Square." BSA owns Bishop Square, which consists of two high-rise commercial office buildings, a parking garage, and a landscaped park, situated on 127,195 square feet of land in downtown Honolulu.

The City valued the property as follows:

|  | Year 1991–92 | Year 1992–93 |
| --- | --- | --- |
| Land | $146,272,800 | $161,536,000 |
| Buildings | 145,496,500 | 152,124,300 |
| Total | $291,769,300 | $313,660,300 |

BSA, however, valued the land at $87,764,600 for the years 1991–92 and 1992–93. BSA timely appealed only the land valuation for both years to the Tax Appeal Court. BSA argued that the City's valuation of the land exceeded the fair market value of the land by more than ten percent, and that there was a lack of uniformity or inequality brought about by the illegality of the methods used or an error in the application of the methods used in violation of ROH § 8–12.3.

On appeal to the Tax Appeal Court, BSA presented evidence of the value of the land. However, because BSA only appealed the assessment of its land, it chose not to present any evidence regarding the value of its buildings. The City, on the other hand, presented evidence regarding the valuation of both BSA's land and buildings.

1. HRS § 232–16 (Supp.1992) provides in part "that [a] taxpayer ... may appeal directly to the tax appeal court without appealing to a state board of review."

The City called and qualified as an expert witness its assessor, Wayne Kaneko (Kaneko), to testify. Through Kaneko, the City had admitted into evidence the assessment notices sent to BSA for the years 1991–92 and 1992–93. These notices contained the City's assessment values of BSA's land and buildings. Kaneko, thereafter, explained the methods used to derive the assessment values and further testified that the ROH mandated that the City "arrive at a fair market value of the property[.]"

Based upon the evidence presented, the Tax Appeal Court determined the fair market value of the land to be between $95,000,000 and $111,000,000 for both tax years. The court, however, refused to reach a final land valuation, because it concluded that relief from the land assessment was not available unless BSA proved that the valuation of both the land and the buildings combined exceeded the market value of the total property by more than ten percent.

Inasmuch as BSA failed to appeal the building assessment and chose not to produce evidence concerning building values at trial, the court concluded that it was without jurisdiction to lower the assessed value of the land. The court also found that there was no evidence of a lack of uniformity or an inequality in the City's assessment of Bishop Square.

BSA appeals the Tax Appeal Court's determination that BSA must establish that the entire property must be over-valued by at least ten percent in order to reduce the clearly illegal land assessment. BSA does not appeal the court's finding that there was no evidence of a lack of uniformity or an inequality in the City's assessment of Bishop Square.

## DISCUSSION

### I.

■ On appeal, BSA contends that because it appealed the assessment against its land only, all it needed to establish at trial was that the City's land assessment value exceeded the fair market value of the land by more than ten percent. We disagree.

■ The main thrust of this appeal is an interpretation of ROH § 8–12.3. When interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes. *Waikiki Resort Hotel v. City and County*, 63 Haw. 222, 239, 624 P.2d 1353, 1365 (1981). Thus, where the language of the ordinance is plain and unambiguous, our only duty is to give effect to that plain and obvious meaning. *See AIG Hawaii Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 633–34, 851 P.2d 321, 328 (1993).

ROH § 8–12.3 (1990) provides:

In the case of a real property tax appeal, no taxpayer shall be deemed aggrieved by an assessment, nor shall an assessment be lowered or an exemption allowed, unless there is shown (1) *assessment of the property exceeds by more than 10 percent of the market value of the property*, or (2) lack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved, or (3) denial of an exemption to which the taxpayer is entitled and for which such person has qualified, or (4) illegality, on any ground arising under the Constitution or laws of the United States or the laws of the state or the ordinances of the city in addition to the ground of illegality of the methods used, mentioned in clause (2).

(Emphasis added.)

BSA contends that the term "property" as used in ROH § 8–12.3 refers to that component of the property, land or buildings, that is appealed for overassessment. Thus, BSA argues that ROH § 8–12.3 only requires it to establish that the City's assessment value of its land exceeds the fair market value of the land by ten percent. BSA, however, fails to recognize that the terms "property" and "real property" as used in ROH Chapter 8 are specifically defined in ROH § 8–1.2.

ROH § 8–1.2 (1990) provides in relevant part:

Whenever used in this chapter:

. . . .

"Property" or "real property" means and includes *all land* and appurtenances

thereof *and the buildings, structures, fences and improvements erected on or affixed to the same,* and any fixture which is erected on or affixed to such land, buildings, structures, fences and improvements, including all machinery and other mechanical or other allied equipment and the foundations thereof, whose use thereof is necessary to the utility of such land, buildings, structures, fences and improvements, of whose removal therefrom cannot be accomplished without substantial damage to such land, buildings, structures, fences and improvements, excluding, however, any growing crops.

(Emphasis added.)

According to the plain and unambiguous language of ROH § 8–1.2, the term "property" as used in ROH § 8–12.3 includes the land and the buildings. Thus, pursuant to ROH § 8–12.3, BSA is not aggrieved by its land assessment, and the Tax Appeal Court is without the authority to lower the land assessment unless it establishes that the city's total assessment value exceeds the market value of the land and the buildings by more than ten percent.

BSA contends that such a ruling would, in effect, nullify its right to appeal the assessment of either the land or the buildings. We disagree.

Our ruling in no way denies BSA the right to appeal the assessment of either its land or its buildings. HRS § 242–14 (1985); Rules of the Tax Appeal Court of the State of Hawai'i (RTAC) Rule 2(b)(2)(C).[2] BSA may appeal either its land or its building or both, but in order to establish that it is aggrieved and to empower the Tax Appeal Court to lower the assessment, the court must be presented with evidence that the assessment value of the entire property exceeded the market value by more than ten percent.

As this court stated previously in *In re Hawaiian Land Co., Ltd.,* 53 Haw. 45, 56, 487 P.2d 1070, 1078 (1971), *appeal dismissed sub nom. Hawaiian Land Co. v. Director of Taxation, State of Hawaii,* 405 U.S. 907, 92 S.Ct. 938, 30 L.Ed.2d 778 *reh'g denied,* 405 U.S. 1048, 92 S.Ct. 1308, 31 L.Ed.2d 591 (1972),[3] our ruling does not limit a taxpayer's right to appeal an assessment; it does, however, limit the authority of the Tax Appeal Court to amend or modify the assessment. This limitation is based on the assumption that valuations of property inevitably lead to differences of opinion. In other words, BSA may appeal its land assessment, but because an appraisal of the land will inevitably lead to a difference of opinion, the Tax Appeal Court is without jurisdiction to lower the assessment unless the assessment value of the total property exceeds its fair market value by more than ten percent.

Accordingly, BSA may appeal the assessment against its land or its buildings or both, but it must establish that the City assessed the value of its total property in an amount that exceeds ten percent of the market value of the property irrespective of the fact that it is appealing the assessment against the land only.

## II.

In the present case, the Tax Appeal Court correctly determined that it was without the power to lower the land assessment unless it was presented with evidence that the city's assessment value of the entire land and buildings, exceeded the fair market value of the property by more than ten percent. The court, however, erred when it held that

---

**2.** HRS § 242–14 (1985) provides in relevant part that this court "shall have the power to make rules relating to procedure, and to prescribe forms to be used, in tax appeals."

RTAC Rule 2(b)(2)(C) provides in relevant part that the notice of appeal to the Tax Appeal Court must state "whether land or improvements or both" are being appealed.

**3.** At the time this court addressed *Hawaiian Land,* real property taxation was a function of the State. However, the legislature pursuant to section 3 of Article VIII of the Constitution of the State of Hawai'i, promulgated HRS Chapter 246A. Chapter 246A transferred the functions, powers and duties for the taxation of real property to the counties effective July 1, 1981. HRS § 246A–2 (1985). Thus, the real property taxation rules are now codified in the ROH.

Because the current rules codified in the ROH substantially mirror the statutes previously addressed by this court in *Hawaiian Land,* the holdings in *Hawaiian Land* are instructive.

it was without jurisdiction to lower the land assessment on the basis that BSA failed to present any evidence of the value of the buildings.

While it is true that BSA chose not to present evidence of the value of the buildings, the Tax Appeal Court clearly had sufficient evidence before it to determine whether the assessment value of both land and buildings exceeded the market value of the property by more than ten percent. According to the record, the City introduced the 1991 and 1992 assessment notices into evidence through its expert witness, Kaneko.[4] BSA did not contest the building assessments. Thus, the assessment value of the buildings must represent, by law, the fair market value of the buildings.[5]

Accordingly, because it is irrelevant that the City rather than BSA presented evidence of the fair market value of the buildings, the Tax Appeal Court erred when it failed to conclude that the city's assessment value of the property exceeded the fair market value of the property by more than ten percent.

## III.

█ We now turn to the issue of whether the record establishes that the city's total assessment value exceeded the fair market value of the property by more than ten percent. We conclude that it did.

The City has not appealed the Tax Appeal Court's finding of fact No. 19 that the fair market value of the land was between $95 million and $111 million. Given the Tax Appeal Court's range for the fair market value of the land, the city's assessment value of BSA's property clearly exceeded the fair market value of the property by ten percent.

To exemplify this point, we take the higher end of the Tax Appeal Court's valuation of the land ($111 million) and add to it the uncontested assessed value of the buildings, i.e. the market value of the buildings:

|  | Year 1991–92 | Year 1992–93 |
|---|---|---|
| Land | $111,000,000 | $111,000,000 |
| Buildings | 145,496,500 | 152,124,300 |
| Total | $256,496,500 | $263,124,300 |

The land and building values added together conclusively prove that, on the high end, the fair market value of BSA's property for the tax years 1991–92 and 1992–93 was $256,496,500 and $263,124,300 respectively.

Because the figures represent fair market values for the purposes of this appeal, BSA was entitled to a reduced assessment if the City's valuation of the property exceeded these values by more than ten percent. In other words, BSA was an aggrieved party if the City's valuation was greater than $282,146,150 for the tax year 1991–92 and/or greater than $289,436,730 for the tax year 1992–93.

According to the record, the City assessed the value of BSA's property at $291,769,300 for the tax year 1991–92 and $313,660,300 for the tax year 1992–93. Both valuations of the property clearly exceed the fair market value

---

4. The notice of the assessment was mailed to BSA pursuant to ROH § 8–2.1(a) (1990) which provides:

(a) On or before March 15th preceding the tax year, the director shall give notice of the assessment for the tax year against each known owner, by personal delivery to the owner of or by mailing to the owner on or before such date postage prepaid and addressed to the owner at the owner's last known place of residence or address a written notice identifying the property involved by the tax key and the general class established in accordance with Section 8–7.1(d) and setting forth separately the valuation placed upon buildings, and the valuation placed upon all other real property, exclusive of buildings, determined pursuant to Section 8–7.1(a), the exemption, if any, allowed or denied, as the case may be, and the amount of the exemption applied to the buildings and the amount applied to all other real property, exclusive of buildings, and the net taxable value of the buildings and the net taxable value of all other real property, exclusive of the buildings.

5. ROH § 8–7.1(a) (1990) provides in part that:

[t]he director of finance shall cause the *fair market value* of all taxable real property to be determined and annually assessed by the market data and cost approaches to value using appropriate systematic methods suitable for mass valuation of properties for taxation purposes, so selected and applied to obtain, as far as possible, uniform and equalized assessments throughout the county[.] ... In making such determination and assessment, the director shall separately value and assess within each class established in accordance with subsection (c) of this section: (1) buildings, and (2) all other real property, exclusive of buildings. (Emphasis added.)

of the property by more than ten percent. Thus, even if we accept the Tax Appeal Court's highest estimate of the fair market value of the land as true, the City's valuation of the property exceeded the market value of the property by more than ten percent for the tax years 1991–92 and 1992–93.

### CONCLUSION

Based on the foregoing, we hold that the Tax Appeal Court erred when it failed to determine the fair market value of BSA's land and to reduce the assessment accordingly.

We therefore vacate the judgment of the Tax Appeal Court and remand this case for a final determination of the fair market value of the land and corresponding reduction of the land assessment based upon the existing record.