191 P.3d 176

Edward CLARK, Ollie Fulks, and Matthew Binder, Plaintiffs–Appellants,

v.

James ARAKAKI, in his official capacity as a candidate, Casey Jarman[1], in her official capacity as County Clerk and Chief Election Officer for the County of Hawai'i, Kevin B. Cronin[2], in his official capacity as Chief Election Officer for the State of Hawai'i, County of Hawai'i, John Does 1–10, Jane Does 1–10, Doe Corporations, Partnerships, Governmental Units or Other Entities 1–20, Defendants–Appellees.

No. 26976.

Supreme Court of Hawai'i.

Aug. 29, 2008.

Reconsideration Denied Oct. 7, 2008.

---

1. Pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 43(c) (2005), Casey Jarman has been substituted as a party to the instant appeal in place of Alan Konishi, in his official capacity.

2. Pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 43(c) (2005), Kevin B. Cronin has been substituted as a party to the instant appeal in place of Dwayne D. Yoshina, in his official capacity.

Fred Paul Benco, Honolulu, on the briefs, for Plaintiffs–Appellants Edward Clark, Ollie Fulks and Matthew Binder.

Joseph K. Kamelamela and Katherine A. Garson, Deputies Corporation Counsel, on the briefs, for Defendants–Appellees County of Hawai'i and Casey Jarman, in her official capacity as County Clerk and Chief Election Officer.

Brian J. De Lima of Crudele & De Lima, Hilo, on the briefs, for Defendant–Appellee James Y. Arakaki.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ. and ACOBA, J., Dissenting.

**Opinion of the Court by NAKAYAMA, J.**

Plaintiffs–Appellants Edward Clark, Ollie Fulks ("Fulks"), and Matthew Binder (collectively, "Appellants"), appeal from the third circuit court's ("circuit court's") November 10, 2004 final judgment and order in favor of Defendants–Appellees, James Arakaki ("Arakaki"), Casey Jarman, Rex M. Quidilla, County of Hawai'i, John Does 1–10, Jane Does 1–10, Doe Corporations, Partnerships, Governmental Units or Other Entities 1–20 (collectively, "Appellees").[3] On appeal, Appellants assert generally that "the [circuit court] committed error both in granting Appellees' summary judgment motions, and in denying Appellants' motion for partial summary judgment as to Count I." For the reasons that follow, we hold that the circuit court (1) did not err when it determined that an amendment to article III, section 3-2 of the Charter of the County of Hawai'i ("the Charter Amendment") was valid notwithstanding its lack of an effective date, and (2) erred when it determined that the first term that counted toward the limit of four consecutive two-year terms was postponed to the term that commenced as a result of the 1998 election. Accordingly, we vacate the circuit court's November 10, 2004 final judgment and order, and remand with instructions to enter summary judgment in favor of Appellants for reasons consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

Article III, section 3-2 of the Charter of the County of Hawai'i provides:

There shall be a county council composed of nine members. One member

---

3. The Honorable Glenn S. Hara presided.

shall be elected from each of nine districts. The terms of the council members shall be two years and shall begin at twelve o'clock meridian on the first Monday of December after their election. *The terms of the council members shall not exceed four consecutive two year terms.* Candidates shall be elected in accordance with the election laws of the state, insofar as applicable.

Charter of the County of Hawai'i ("CCH") art. III, § 3–2 (2000) (emphasis added).

On January 25, 1995, the Hawai'i County Council adopted ordinance 95–20, which proposed to place on the 1996 general election ballot an amendment to the Charter to be submitted to the electorate of Hawai'i County. County of Hawai'i, Haw., Ordinance 95–20 (Jan. 25, 1995). The entire text of the Charter Amendment states: "The terms of the council members shall not exceed four consecutive two year terms." *Id.* The purpose of the Amendment was simply "to provide term limits for county council members." *Id.*

Pursuant to section 5 of Ordinance 95–20, Resolution No. 298–96 was adopted by the Hawai'i County Council, which required public notice of the proposed Charter Amendment. In the "Public Notice Of Proposed Amendments To the Hawaii County Charter[,]" the "Digest" associated with the Charter Amendment stated, as follows:

This proposal would limit the term of council members so that no council member may be elected for more than four consecutive two year terms. If this proposal is passed, a council member may only be elected for four straight terms, thus serving a total of eight years in a row. A council member may be elected for more than four terms as long as the terms are not consecutive.

The public notices lacked any information on the effective date of the Amendment.

On November 5, 1996, the voters of Hawai'i County voted to approve the proposed Charter Amendment by a vote of 33,542 to 10,428. The results of the vote was certified by the county clerk on November 25, 1996. The Charter Amendment, as approved and certified, did not contain an effective date.

On July 22, 1998, the Hawai'i County Council adopted ordinance 98–78, which, among other things, affixed the effective date for the Charter Amendment at "twelve o'clock meridian on the first Monday of December, 1996." County of Hawai'i, Haw., Ordinance 98–78, § 1 (July 22, 1998); However, the primary purpose of this amendment was to amend Article III, section 3–2 by "chang[ing] the current limit of four consecutive two-year terms to two consecutive four-year terms." *Id.* This ordinance was not approved by the county electorate in the 1998 election.

Arakaki has continuously served on the Hawai'i County Council since 1992. He filed nomination papers for the 1996 election on July 23, 1996, at which time there were no term limits in effect. On November 5, 1996, Arakaki was elected to serve a two-year term on the Hawai'i County Council commencing the first Monday of December 1996. On November 25, 1996, the county clerk certified the results of Arakaki's election.

Arakaki has served as an elected member of the county council during the following consecutive two-year terms: 1992–1994, 1994–1996, 1996–1998, 1998–2000, and 2000–2002. When the complaint that initiated the instant case was filed on July 27, 2004, he was serving a two-year term that began in December 2002.

## B. Procedural Background

On July 19, 2004, Arakaki filed nomination papers for the Hawai'i County Council District Three seat for a two-year term commencing December 6, 2004. Arakaki and Fulks were the only candidates running for the District Three seat in the September 18, 2004 nonpartisan county election.

On July 27, 2004, Fulks and two other voters, Edward Clark and Matthew Binder, filed a complaint for declaratory judgment and other relief in the circuit court challenging Arakaki's eligibility as a candidate in the 2004 election. Specifically, Appellants sought a declaration that Arakaki's candidacy for re-election violated the term limits of the Charter of the County of Hawai'i, and for Arakaki's name to be stricken from the bal-

lot. On August 16, 2004, Appellants filed a motion for partial summary judgment.

On September 7, 2004, Arakaki filed a cross-claim asserting that the Charter Amendment was void because of its lack of an effective date. On September 10, 2004, Arakaki filed a motion for summary judgment on his cross-claim.

On September 18, 2004, Arakaki was elected to the Hawai'i County Council seat for District Three. The election results were as follows: 3,104 votes for Arakaki, 796 votes for Fulks, and 560 blank votes. *Fulks v. Konishi*, No. 26834, slip op. at 2 (Haw. October 8, 2004).

On September 24, 2004, Fulks filed a complaint in this court challenging the results of the election. *Id.* This court dismissed his complaint because, even if this court accepted all of Fulks' allegations as true, this court had no jurisdiction to declare Fulks the winner of the 2004 election and order his term of office to begin in accordance with Hawai'i Revised Statutes ("HRS") § 12–42 (1993),[4] inasmuch as Fulks was not unopposed. *Id.* This court also determined that it had no jurisdiction "in this election contest to declare a provision in the Hawai'i County Charter invalid and meaningless." *Id.*

On November 10, 2004, the circuit court filed its final judgment and order granting Arakaki's motion for summary judgment, and denying Appellants' motion for partial summary judgment. In its order, the circuit court determined that the Charter Amendment was valid, and the first election to which it applied was to candidates elected to serve a term commencing the first Monday in December 1998. Because of the court's

determination, Arakaki's 1996–1998 term would not count towards the four consecutive term limit promulgated by the Charter Amendment. The circuit court reasoned that application of the Charter Amendment "to the election of 1996 council members raises issues of retroactive application." Consequently, because the "Charter Amendment contained no express provision as to its operative date[,]" it "shall be prospectively applied with the operative election being the 1998 election."

On November 30, 2004, Appellants timely filed their notice of appeal.

## II. STANDARD OF REVIEW

■■■ On appeal, the grant or denial of summary judgment is reviewed *de novo. See State ex. rel. Anzai v. City and County of Honolulu,* 99 Hawai'i 508, 514, 57 P.3d 433, 439 (2002); *Bitney v. Honolulu Police Dep't,* 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

4. HRS § 12–42 provides, in its entirety:
 (a) Any candidate running for any office in the State of Hawaii in a special election or special primary election who is the sole candidate for that office shall, after the close of filing of nomination papers, be deemed and declared to be duly and legally elected to the office for which the person is a candidate. The term of office for a candidate elected under this subsection shall begin respectively on the day of the special election or on the day of the immediately succeeding special general election.
 (b) Any candidate running for any office in the State of Hawaii in a special general elec-

tion who was only opposed by a candidate or candidates running on the same ticket in the special primary election and is not opposed by any candidate running on any other ticket, nonpartisan or otherwise, and is nominated at the special primary election shall, after the special primary, be deemed and declared to be duly and legally elected to the office for which the person is a candidate at the special primary election regardless of the number of votes received. The term of office for a candidate elected under this subsection shall begin on the day of the special general election.

*Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

## III. DISCUSSION

■ The instant case presents the novel issue of how to properly construe the Charter Amendment's lack of an effective date.[5] As discussed *supra*, the Charter Amendment was approved without an effective date by the county electorate in the 1996 election. Arakaki was elected as a Hawai'i County council member in the same election, and has since served four consecutive two-year terms between 1996 and 2004. Notwithstanding its silence, if the Charter Amendment became effective with its electorate approval in 1996, then by its terms, Arakaki would be proscribed from seeking election in 2004 as a Hawai'i County council member. *See* CCH art. III, § 3–2.

■ Preliminarily, we note briefly that the question before us is moot, inasmuch as the 2004 election has already occurred. *See Okada Trucking Co., Ltd. v. Bd. of Water Supply*, 99 Hawai'i 191, 196, 53 P.3d 799, 804 (2002) ("Inter Island's appeal is moot because the contract has already been completed.").

> [A] case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where "events" ... have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

*Doe v. Doe*, 116 Hawai'i 323, 326, 172 P.3d 1067, 1070 (2007) (citation omitted, brackets added, and ellipsis in original). Because the

2004 election has already taken place, "[t]he controversy between the parties has thus clearly ceased to be 'definite and concrete' and no longer 'touches the legal relations of parties having adverse legal interest.'" *Wong v. Bd. of Regents, Univ. of Hawaii*, 62 Haw. 391, 396, 616 P.2d 201, 205 (1980) (citation omitted).

■ However, there is an exception to the mootness doctrine "that occurs in cases involving a legal issue which is capable of repetition, yet evading review." *Life of the Land v. Burns*, 59 Haw. 244, 251, 580 P.2d 405, 409 (1978) (block format and citation omitted); *see Rees v. Carlisle*, 113 Hawai'i 446, 456, 153 P.3d 1131, 1141 (2007).

> The phrase, "capable of repetition, yet evading review," means that a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because of the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit.

*Life of the Land*, 59 Haw. at 251, 580 P.2d at 409–10 (citation omitted).

On July 19, 2004, Arakaki filed his nomination papers for the District Three seat of the Hawai'i County Council. On July 27, 2004, Appellants filed their complaint in the circuit court challenging Arakaki's eligibility as a candidate in the 2004 election. Arakaki was elected by majority vote on September 18, 2004. In light of the brief period of time between the filing of Arakaki's nomination papers and the election, it is likely that this action not only "would evade full review because of the passage of time[,]" but also could "reasonably be expected to recur" thereby

---

5. Arakaki asserts that Appellants' point of error does not comply with Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4)(A-D) (2005). Technically, there is a defect inasmuch as Appellants do not include a "quotation of the finding or conclusion urged as error[.]" HRAP Rule 28(b)(4)(C). This court has consistently held that failure to comply with the requirements of HRAP 28(b)(4) is alone sufficient to affirm the circuit court's judgment. *Morgan v. Planning Dep't, County of Kauai*, 104 Hawai'i 173, 180, 86 P.3d 982, 989 (2004). Nevertheless, this court has also "adhered to the policy of affording litigants the opportunity to have their cases heard on the

merits, where possible." *Id.* at 180–81, 86 P.3d at 989–90 (citation and quotation marks omitted). Inasmuch as the instant appeal requests a review of the circuit court's decision to judicially impose an effective date for the Charter Amendment, which was approved by the county electorate in the 1996 election without an effective date, the resolution of this issue is of great importance to the county and voting public of Hawai'i. *See id.* Accordingly, because of the importance of the issue raised, we will address the merits of Appellants' point of error notwithstanding its technical violation of HRAP Rule 28(b)(4)(C).

preventing a plaintiff from seeking relief under section 3-2 of the Hawai'i County Charter. *See id.* at 251–52, 580 P.2d at 410 (citation and quotation marks omitted). Because this case falls under the "capable of repetition, yet evading review" exception to the mootness doctrine, we will consider the merits of this appeal.

## A. The Charter Amendment Is Valid Notwithstanding Its Lack Of An Effective Date.

Appellees reiterate their argument made in the circuit court that the Charter Amendment is void because of its lack of an effective date. Appellees also contend that the Charter Amendment is void because it is dissimilar from other state and federal term limit provisions.

### 1. *The Hawai'i County Council is not required to model the Charter Amendment pursuant to similar state and federal term limit provisions.*

 "Upon the adoption of [a county's] charter, it shall become the organic law of the county superceding any existing charter and all laws affecting the organization and government of the county which are in conflict therewith." *Hawaii Gov't Employees' Ass'n v. County of Mau'i*, 59 Haw. 65, 79, 576 P.2d 1029, 1038 (1978) (quoting HRS § 50–10 (1993)) (quotation marks omitted). This court observed that the delegates to the 1968 Constitutional Convention "intended that county charters acquire a stature which would resist legislative interference in some areas." *Id.* at 75–76, 576 P.2d at 1036. These areas encompass those charter provisions that "affect[ ] the organization and government of the county. . . ." *Id.* at 78–79, 576 P.2d at 1038 (quoting HRS § 50–10) (quotation marks omitted).

> As presented . . . the area which the proposal places beyond legislative control is limited to charter provisions as to the executive, legislative and administrative structure and organization of the political subdivision. For example, the legislature could not change the composition of the legislative body of a county. *However, the proposal specifically preserves the authority of the legislature to enact general laws allocating and reallocating powers and functions.* This means that the legislature could transfer a function from the county to the state level even if the result would be to eliminate a department of the county government provided for in its charter.

*Id.* at 75, 576 P.2d at 1036 (quoting Vol. 1 Proceedings of the Constitutional Convention of Hawaii of 1968, 229) (emphasis added).

The Charter Amendment, as adopted and approved in article III, section 3-2 of the Hawai'i County Charter, provides for term limits for Hawai'i County council members. Appellees seem to contend that because term limits "allocat[e] and reallocat[e] powers and functions" of the county, the Charter Amendment is required to be drafted in a similar manner as other state and federal term limit provisions. However, term limits for council members clearly affects the "structure and organization" of the membership of the Hawai'i County council. *See id.* at 84, 576 P.2d at 1040–41 ("The revised charter provision changing the number of members serving on the Maui police commission is a matter of executive and administrative structure and organization and is superior to conflicting statute." (Footnote omitted.)). Therefore, inasmuch as it appears that a term limit for council members was intended to be one of those areas that is "beyond legislative control," we hold that the Hawai'i County Council is not required to model the Charter Amendment pursuant to other similar state and federal term limit provisions. *See id.* at 75, 576 P.2d at 1036.

### 2. *The Charter Amendment's lack of an effective date does not render the Amendment void.*

 Provisions in a county charter that "affect[ ] the organization and government of the county" are construed pursuant to fundamental principles of construction relating to constitutional provisions. *See id.* at 80–81, 576 P.2d at 1039. As such, we must "give effect to the intention of the framers and the people adopting" the provision in the county charter. *Id.*

"[T]he general rule is that, if the words used in a constitutional provision . . . are clear and unambiguous, they are to be construed as written." *Watland v. Lingle*, 104 Hawai'i 128, 139, 85 P.3d 1079, 1090 (2004) (quotation marks and citation omitted). In this regard, "the words are presumed to be used in their natural sense unless the context furnishes some ground to control, qualify, or enlarge them." *Id.* (quotation marks and citation omitted). Moreover, "[t]he provisions of a constitution which regulate its own amendment are not merely directory, but mandatory. [S]trict observance of every substantial requirement is essential to the validity of the proposed amendment." *Id.* (block format, emphasis, and citations omitted).

Arakaki asserts that the county charter requires an amendment to contain an effective date in order to be valid. Because of this requirement, Arakaki asserts that the Charter Amendment's lack of an effective date renders the Amendment void.[6]

HRS § 50–11 (1993) provides, in its entirety:

Every charter established under this chapter shall provide means by which the charter may be amended or revised. The provisions for amendment and revision must provide for approval of all amendments and revisions by referendum to the electors of the county. The amendment or revision shall be considered ratified if a majority of the electors voting on the amendment or revision cast their ballots in favor of adoption.

Article XV of the 1991 Charter of the County of Hawai'i provides for amendment or revision in the following manner:

**Section 15–1. Initiation of Amendments or Revisions.** Amendments or re-

visions of this charter may be initiated only in the following manner:

(a) By ordinance of the council adopted after three readings on separate days and passed by the affirmative vote of two-thirds of the entire membership.

. . . .

**Section 15–2. Elections to be Called.** Upon adoption of an ordinance proposing amendments or revisions of this charter, . . . the council shall by resolution provide that the proposed amendments or revisions be submitted to the electors of the county for approval at the next general election. Any such resolution shall provide for the publication of the full text of the proposed amendments or revisions in at least two daily newspapers of general circulation in the county at least forty-five (45) days prior to submission to the electors of the county.

**Section 15–3. Mandatory Charter Reviews.** The charter shall be reviewed in 1989 and every tenth year thereafter. Not later than the fifteenth day of January of the charter review year, the mayor with the confirmation of the council, shall appoint a charter commission composed of eleven members to study and review the operation of the government of the county under this charter. . . . The council shall appropriate funds to enable the commission to carry out its duties, including the hiring of necessary staff.

The commission shall hold at least one public hearing in each of the geographical areas. The commission may propose amendments to the existing charter or a draft of a new charter which shall be submitted to the county clerk. Upon receipt of the amendments or charter in the form as proposed by the commission, the county clerk shall provide for the submission of

---

6. Appellants assert that estoppel, quasi-estoppel, and waiver preclude Appellees from claiming that the Charter Amendment is void because, among other reasons, many years have passed since the Amendment was ratified. However, one of the arguments made by Appellants in their opening brief is that the Charter Amendment is "presumed valid, and Appellees cannot show as a matter of law that the amendment was invalid beyond a reasonable doubt[.]" Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(c) (2005) states that an answering brief "shall be of like character as that required for an opening brief except that no statement of points shall be required, and no other section is required *unless the section presented in the opening brief is controverted.*" (Emphasis added.) Accordingly, we fail to find any error because Appellees' argument was merely made to "controvert[ ]" Appellants' argument that the Charter Amendment is "presumed valid." *See id.*

such amendments or charter to the electors of the county at either a special election as determined by the commission or at the first general election following the charter review year. The commission shall prepare the language of the question to be submitted to the voters for each of the amendments it proposes.

The commission shall publish not less than forty-five (45) days before any election, at least two daily newspapers of general circulation within the county, a brief digest of the amendments or charter and the purpose thereof and a notice to the electorate that copies of the amendments or charter are available at the office of the county clerk.

Members of the commission shall hold office until the amendments or charter is ratified or rejected.

*If the majority of the voters voting upon a charter amendment votes in favor of it or a new charter, if a new charter is proposed, the amendment or new charter shall become effective at the time fixed in the amendment or charter.*

CCH art. XV (1991) (emphasis added); Arakaki asserts that the above emphasized portion requires the inclusion of an effective date for the Charter Amendment to be valid.

Standing by itself, it appears that the disputed portion of section 15–3 clearly and unambiguously states that when a majority of the voters vote in favor of an amendment, that amendment "shall become effective at the time fixed in the amendment. . . ." Logically, in order for the amendment to become effective "at the time fixed in the amendment[,]" the amendment itself must contain the "time" that it becomes effective. Hence, it can be inferred that section 15–3 mandates that an amendment must contain the "time" that it becomes effective. *See Watland*, 104 Hawai'i at 139, 85 P.3d at 1090 ("[T]he settled rule is that in the construction of a constitutional provision the words are presumed to be used in their natural sense *unless the context furnishes some ground to control, qualify, or enlarge them.*" (Emphasis added.)).

However, this mandate is subsumed under section 15–3, which is entitled "Mandatory Charter Reviews." According to this section, "[t]he charter shall be reviewed in 1989 and every tenth year thereafter." CCH art. XV, § 15–3. The vote on the Charter Amendment took place on November 5, 1996, which is less than the ten-year time frame contemplated by section 15–3. Moreover, the record on appeal does not indicate that a "charter commission composed of eleven members" was appointed by the "mayor with confirmation of the council[.]" *Id.* Accordingly, we cannot say that the Charter Amendment was amended pursuant to section 15–3. *See* HRS § 50–11.

In fact, it appears that the language of article XV provides for two distinct procedures through which the charter of the County of Hawai'i may be amended. As discussed above, the mandatory charter review required by section 15–3 "in 1989 and every tenth year thereafter[ ]" provides one procedure through which the charter may be amended. The second procedure is provided through sections 15–1 and 15–2.

Section 15–1 of article XV provides that an amendment may be initiated through an ordinance that is adopted by the council "after three readings on separate days and passed by the affirmative vote of two-thirds of the entire membership." CCH art. XV, § 15–1(a). Ordinance 95–20 was properly adopted by the council in this manner, and Appellees do not dispute its propriety.

Section 15–2 requires the council to submit a resolution that provides (1) that the amendment will be submitted to the electorate for their approval at the next election, and (2) that the proposed amendment be published "in at least two daily newspapers of general circulation in the county at least forty-five (45) days prior to submission to the electors of the county." CCH art. XV, § 15–2. Appellees do not dispute the propriety of ordinance 95–20's publication.

Comparing sections 15–1 and 15–2 to section 15–3 reveals that, unlike section 15–1's method of initiating an amendment, section 15–3 requires only that an "eleven member" charter commission, as created by section 15–3, "hold at least one public hearing in each of the geographical areas" of the Coun-

ty of Hawai'i, and "may propose amendments to the existing charter ... which shall be submitted to the county clerk." CCH art. XV, § 15–3. Additionally, publication is separately provided for in section 15–3 in a very similar manner as section 15–2. *See id.* However, neither section 15–1 nor section 15–2 contains section 15–3's requirement that an amendment "shall become effective at the time fixed in the amendment...." *Id.* Because sections 15–1 and 15–2 lack an effective date requirement, and article XV clearly and unambiguously provides for two distinct procedures through which the charter may be amended, we cannot say that the Charter Amendment's lack of an effective date presents a "plain, clear, manifest, and unmistakable" violation of article XV of the charter of the County of Hawaii. *See Taomae v. Lingle,* 108 Hawai'i 245, 251, 118 P.3d 1188, 1194 (2005). Accordingly, we hold that the circuit court did not err when it determined that the Charter Amendment was valid notwithstanding its lack of an effective date.[7]

**B. The First Term Counted Towards the Limit Enumerated In the Charter Amendment Is the Term That Commenced At Twelve O'clock Meridian On the First Monday of December After the 1996 Election.**

 Appellants assert that the Charter Amendment became effective on the date of either the 1996 election (November 5, 1996), or the certification of the 1996 election results (November 25, 1996). Under either scenario, Appellants assert that the first term counted toward the limit enumerated in the Charter Amendment is the term that commences as a result of the 1996 election. Appellees, however, contend that the first term counted toward the limit enumerated in the Charter Amendment is the term that commences as a result of the 1998 election.

To reiterate, the entire text of the Charter Amendment provides that "[t]he terms of the council members shall not exceed four consecutive two year terms." County of Hawai'i, Haw., Ordinance 95–20. The Charter

Amendment was approved by the county electorate in the 1996 election. However, as discussed *supra,* the text of the Charter Amendment is silent as to which terms count towards the limit of "four consecutive two year terms." Moreover, legislative history or its equivalent that could be used to clarify the intent of the framers of the Charter Amendment is also silent on this issue. Consequently, a puzzling anomaly appears within the language of article XV of the county charter, insofar as section 15–3 describes the mode of approval of charter amendments while sections 15–1 and 15–2 are silent. Thus, in order to clarify that for which there is only silence, we will resort to HRS § 50–11.

HRS § 50–11 mandates that an amendment or revision to a county charter "shall be considered ratified if a majority of the electors voting on the amendment or revision cast their ballots in favor of adoption." Black's Law Dictionary defines the word "ratification" as an "[a]doption or enactment, esp. where the act is the last in a series of necessary steps or consents.... In this sense, ratification" includes "a formal approval of a constitutional amendment...." *Black's Law Dictionary* 1289 (8th ed.2004); *see Druggan v. Anderson,* 269 U.S. 36, 39, 46 S.Ct. 14, 70 L.Ed. 151 (1925) ("The moment that the Amendment was ratified it became effective as a law.").

After the day of the election, HRS § 11–156 (1993) mandates that "[t]he chief election officer or county clerk shall deliver certificates of election to the persons elected as determined under section 11–155." Additionally, "[t]he chief election officer or county clerk in county elections shall issue certificates of results where a question has been voted upon." *Id.* In relevant part, HRS § 11–155 (1993) provides that,

> [o]n receipt of certified tabulations from the election officials concerned, the chief election officer or county clerk in county elections *shall compile, certify, and release* the election results after the expiration of the time for bringing an election con-

---

7. We note that Appellants assert that the Charter Amendment is constitutional on its face. However, Appellees do not contest the constitutionality

of the Amendment. Moreover, this issue is not dispositive to this appeal. Accordingly, we decline to express an opinion as to this issue.

test.... The position on the question receiving the appropriate majority of the votes cast shall be reflected in a certificate of results issued pursuant to section 11–156.

(Emphasis added.)

The result of the vote on the Charter Amendment was certified by the county clerk on November 25, 1996. Consonant with the foregoing, because the mandated certification is "the last in a series of necessary steps or consents[,]" *see Black's Law Dictionary* 1289, the Charter Amendment was ratified on November 25, 1996. *See* HRS § 50–11. Accordingly, the Charter Amendment could theoretically be construed to apply to any one of the following scenarios: (1) retroactively to include those terms that preceded the Amendment's ratification; (2) prospectively where the first term counted towards the limit is the term that commenced at twelve o'clock meridian on the first Monday of December after the 1996 election; or (3) prospectively, as the circuit court determined, where the first term counted towards the limit is the term that would commence on the first Monday in December after the 1998 election.

This court has acknowledged that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." *Graham Constr. Supply, Inc. v. Schrader Constr., Inc.,* 63 Haw. 540, 546, 632 P.2d 649, 653 (1981) (quoting HRS § 1–3 (1993)) (quotation marks omitted). Based on the plain language of the Charter Amendment and its lack of legislative history on this issue, we cannot say that there is "an expression or obvious intendment" that the Charter Amendment was intended to have "any retrospective operation." *See id.* Accordingly, we decline to apply the Charter Amendment retroactively to include those terms that preceded the Amendment's ratification towards the limit of "four consecutive two year terms."

 It has been said that "[u]nless otherwise provided by law, amendments of constitutional charters take effect from the date of their approval by the people." 2A Eugene McQuillin, *The Law of Municipal Corporations* § 9:30 (3d ed.2006). Similarly, this court has held that "[a]n Act of the legislature becomes a law upon its approval by the governor." *In re Marques,* 37 Haw. 260, 268 (Hawai'i Terr.1945) (footnote omitted). As such,

> [w]here an Act of the legislature contains certain provisions that are postponed to take effect at a future date and there is no implication or expression therein that the Act itself should be postponed, the Act itself takes effect upon approval and the only sections postponed to take effect are those where the postponement is expressed therein or is to be implied therefrom.

*Id.* (footnote omitted).

In this case, the Charter Amendment fails to indicate whether its effective date or the first term to count towards the limit of "four consecutive two year terms" is to be postponed to 1998. *See id.* In light of the Charter Amendment's silence, we hold that the Amendment became effective on November 25, 1996, which is the day that the Amendment was "ratified" by a "majority of the electors voting on the amendment: . . ." *See* HRS § 50–11; *see also* HRS §§ 11–155 to –156. Consequently, we also hold that the first term counted towards the limit of "four consecutive two year terms" is the term that commenced "at twelve o'clock meridian on the first Monday of December after" the 1996 election. *See* CCH art. III, § 3–2; *In re Marques,* 37 Haw. at 268.

The County of Hawai'i relies on *U.S. Term Limits, Inc. v. Hill,* 316 Ark. 251, 872 S.W.2d 349 (1994), *Woo v. Superior Court,* 83 Cal. App.4th 967, 100 Cal.Rptr.2d 156 (Cal.Ct. App.2000), and *Kuryak v. Adamczyk,* 705 N.Y.S.2d 739, 265 A.D.2d 796 (App.Div.1999), in support of its assertion that the Charter Amendment's silence begets an ambiguity that must be resolved in favor of Arakaki. *Woo* and *Kuryak,* however, are inapposite.

In *Woo,* a new charter repealed the former charter and, in repealing the former charter, omitted certain language from the existing term limit provision. 83 Cal.App.4th at 970–72, 100 Cal.Rptr.2d at 158–60. The new charter was approved by the voters in June 1999. *Id.* at 159, 100 Cal.Rptr.2d at 159.

The California court was confronted with the issue of whether certain terms that preceded the approval of the 1999 charter were to be counted towards the two-term limit enumerated therein. *Id.* at 976, 100 Cal.Rptr.2d at 163. Similarly, in *Kuryak*, the New York court addressed the issue of whether the respondents were proscribed from serving a third term when, during their first term in public office, the term limit provision was amended to a maximum limit of two consecutive terms. 705 N.Y.S.2d at 739, 265 A.D.2d at 796.

As discussed above, however, we decline to apply the Charter Amendment retroactively to include those terms that preceded the Amendment's ratification towards the limit of "four consecutive two year terms." Therefore, these cases are inapposite.

In *Hill*, the Arkansas state constitution was amended to establish a limitation on the number of terms that, *inter alia*, state public officials could serve. 872 S.W.2d at 351. This amendment was approved by the voters in the November 3, 1992 general election, and by its terms, became effective on January 1, 1993. *Id.* Similar to the instant case, the issue before the Arkansas court was which terms of service should be counted toward the term limit enumerated in the amendment. *Id.* at 360–61. Pursuant to the law of its jurisdiction, the court ultimately held that "[o]nly periods of service commencing *on or after* January 1, 1993, will be counted as a term for limitations purposes under" the amendment. *Id.* at 361 (emphasis added).

Similar to *Hill*, the Charter Amendment was ratified by the voters of Hawai'i County on November 25, 1996. Pursuant to section 3–2 of the Hawai'i County Charter, "[t]he terms of the council members shall ... begin at twelve o'clock meridian on the first Monday of December after their election." As discussed above, the Charter Amendment fails to indicate (1) whether those terms of service that preceded the Amendment's ratification are to be counted toward the limit of "four consecutive two year terms[,]" *see Graham Constr. Supply, Inc.,* 63 Haw. at 546, 632 P.2d at 653, and (2) whether the first term counted towards the limit is to be postponed to the term commencing as a result of the 1998 election, *see Marques,* 37 Haw. at 268. Therefore, the first term counted towards the limit of "four consecutive two year terms" is the term commencing "at twelve o'clock meridian on the first Monday of December after" the 1996 election. *See* CCH art. III, § 3–2.

Finally, Arakaki contends that the Charter Amendment cannot apply to the term that commences as a result of the 1996 election because the Amendment was not part of the "election laws of the state[]" when Arakaki filed his nomination papers for the council seat in 1996.[8] Consequently, Arakaki asserts that application of the Charter Amendment's term limit should be postponed to the term commencing as a result of the 1998 election.

However, the issue in this case is not whether Arakaki, in 1996, was nominated and elected in accordance with the laws of the state. Rather, the issue is whether, after being elected, Arakaki's two-year term that commenced as a result of the 1996 election was the first term counted toward the limit enumerated in the Charter Amendment.[9]

---

8. In 1996, section 3–2 of the Hawai'i County Charter stated that "[c]andidates shall be nominated and elected in accordance with the election laws of the state."

9. The dissent appears concerned that our holding will give the Charter Amendment retrospective effect because it was not part of the election laws of the state when Arakaki filed his nomination papers. Dissenting opinion at 368–71, 191 P.3d at 189–92. However, our holding in this case interpreting the language of the Charter Amendment does not implicate the nomination process prior to the 1996 election or the 1996 election results. Further, it is undisputed that Arakaki was an elected member of the Hawai'i County

Council at all times relevant to this case. In fact, Arakaki, as an elected member of the county council, participated in all three readings of the Charter Amendment. *See* CCH art. XV, § 15–1(a) ("Amendments or revisions of this charter may be initiated only in the following manner: (a) By ordinance of the council adopted after three readings on separate days and passed by the affirmative vote of two-thirds of the entire membership."). In the second and third readings, Arakaki voted against adopting the Amendment apparently because he instead favored a term limit consisting of two four-year terms. Therefore, it cannot be disputed that Arakaki knew (1) of the Charter Amendment's existence,

Inasmuch as we hold that the Charter Amendment was effective when ratified on November 25, 1996, and the language of the Amendment fails to indicate that its applicability should be postponed to 1998, *see Marques,* 37 Haw. at 268, Arakaki's two-year term that began "at twelve o'clock meridian on the first Monday of December after" the 1996 election was the first term that counted toward the "four consecutive two year term" limit.

## IV. CONCLUSION

Based upon the foregoing analysis, we vacate the circuit court's November 10, 2004 final judgment and order, and remand with instructions to enter summary judgment in favor of Appellants for reasons consistent with this opinion.

Dissenting Opinion of ACOBA, J.

I agree with the determination of the Circuit Court of the Third Circuit (the court) that the subject Charter Amendment (Amendment) should be prospectively applied with the first term of the four-term limit to begin following the election subsequent to the adoption of the Amendment. Term limits provisions not in existence but only ratified by voters in the same general election in which incumbents are elected should apply to the next election cycle. To hold otherwise wrongfully gives the term limits provision retrospective effect. *See Taniguchi v. Ass'n of Apt. Owners of King Manor, Inc.,* 114 Hawai'i 37, 48, 155 P.3d 1138, 1149 (2007) (holding that "all statutes are to be construed as having only a prospective operation unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used" (internal quotation marks and citations omitted)). Inasmuch as the majority holds otherwise, I respectfully dissent.

(2) that it would be submitted to the county electorate for its approval in the 1996 election, and, (3) if approved by the county electorate and the results certified by the county clerk, that it would be effective on the date of its certification.

I.

A.

Defendant–Appellee James Arakaki (Arakaki) served consecutive terms on the Hawai'i County Council in 1992–1994 and 1994–1996.

On January 25, 1995, the Hawai'i County Council adopted Ordinance 95–20 entitled, "An Ordinance to Initiate a Charter Amendment to Section 3–2, Article III of the Hawai'i County Charter Relating to Composition and Terms of the Hawai'i County Council." The proposed Amendment, with the material to be added underscored, read:

Section 3–2. Composition and Terms. There shall be a county council composed of nine members. One member shall be elected from each of nine districts. The terms of the council members shall be two years and shall begin at twelve o'clock meridian on the first Monday of December after their election. The terms of the council members shall not exceed four consecutive two year terms. Candidates shall be nominated and elected in accordance with the election laws of the state.

According to the majority, Arakaki filed his nomination papers on July 23, 1996, prior to the nomination filing deadline to run for the 1996–1998 term.[1] The Hawai'i County Council general election was on November 5, 1996.

The proposed Amendment was apparently placed on the ballot on November 5, 1996. On November 5, 1996, Arakaki was re-elected to serve a two-year term on the Hawai'i County Council, commencing on the first Monday of December 1996. On this same date, the proposed Amendment was approved by the voters.

On November 25, 1996, the Hawai'i County Clerk certified the results of the vote on the Amendment. Pursuant to the 1996 election, Arakaki served a term from 1996–1998.

1. None of the parties state the exact date on which Arakaki filed his nomination papers to run in the 1996 election. However, in the Stipulation of Facts filed in the court, they agreed that it was before the filing deadline.

On July 22, 1998, the Hawai'i County Council adopted Ordinance 98–78, which declared that the Amendment had previously become effective at "twelve o'clock meridian *on the first Monday of December, 1996*," *i.e.*, at the commencement of terms of persons elected in same November 5, 1996 election in which the Amendment had been voted on. (Emphasis added.)

Arakaki was subsequently re-elected to serve two-year terms for 1998–2000, 2000–2002, and 2002–2004. On July 19, 2004, Arakaki filed papers to run for the Hawai'i County Council 2004–2006 term, which started on December 6, 2004.

On July 27, 2004, Plaintiffs–Appellants Edward Clark, Ollie Fulks, and Matthew Binder [collectively, Appellants] filed a Complaint for Declaratory Judgment and Other Relief (Complaint), contesting Arakaki's eligibility as a candidate in the 2004 election. They claimed that Arakaki had "served at least four (4) consecutive terms as a member of the Hawai'i County Council, *since December of 1996*, and is thereby barred from seeking re-election and/or from serving on the Hawai'i County Council." (Emphasis added.) Under this claim, Arakaki's election for the 2004–2006 term would be his fifth consecutive term and, thus, prohibited under the Amendment.

The court identified three possible applications of the Amendment:

1. The Amendment was immediately effective upon its adoption[2] so as to preclude anyone who had already served four consecutive terms from office. If a fourth consecutive term was served as a result of the 1996 election, that individual was precluded from serving any more terms.

2. If an incumbent was first elected in 1994, the 1994–1996 term was considered the first term. If elected for the first time during the same election as the 1996 Charter Amendment, the 1996 election would be the first term.

3. The first term under the Amendment would begin in the election following 1996, held in 1998, without respect to how many terms had been previously served.

The court concluded that the third option, which was also the construction given the Amendment by Arakaki and Defendant–Appellee County of Hawai'i (County) [collectively, Appellees], was the correct interpretation. The court concluded that:

> [I]n viewing all of these [options] and balancing these conflicting interests[, it] would find that the most consistent reading of the term limits would require that the [third] alternative, i.e., that *the first term to be counted against . . . a four-term limit [would] begin[ ] in 1998[,]* would best serve the interests of those—those competing interests that [the court] indicated [above].

(Emphasis added.) Thus, the court concluded that the Amendment was "*prospective and only went into effect in 1998.*" (Emphasis added.) Relatedly, in its November 10, 2004 "Final Judgment and Order Regarding Plaintiff's [sic] Motion for Summary Judgment," the court explained that

> *[t]o apply the [Amendment] to the election of 1996 council members raises issues of retroactive application.* The [Amendment] contained no express provision as to its operative date and as such[,] ∴ as a matter of law . . . the [Amendment] shall be prospectively applied with the operative election being the 1998 election.

(Emphasis added.)

### B.

However, the majority believes the term beginning in December 1996 resulting from the 1996 election should be the first term to count towards the four-term limit. Majority opinion at 365, 191 P.3d at 186 (holding that "the Amendment became effective on November 25, 1996," the date upon which it was " 'ratified' by a majority of the electors voting on the amendment' " (citing Hawai'i Revised Statutes (HRS) §§ 50–11 (Supp.1996),

---

**2.** Although the court did not state explicitly when it concluded that the Amendment had been adopted, it appears that the court considered November 5, 1996 to be the date of adoption, based on its oral ruling that it agreed that the Amendment "became effective when it was adopted on [sic] the general election."

11–155 to –156)). With all due respect, I believe, as the court had concluded, that the Amendment must be *prospectively* applied. Logically, that would mean the Amendment must apply to persons elected *after* its adoption, *i.e.*, effective with the December 1998 term following the 1996 adoption of the Amendment and not, as the majority would hold, persons elected contemporaneously with the 1996 Amendment.

## II.

First, in my view, the Amendment must be applied prospectively beginning with the 1998–2000 term because pursuant to HRS § 1–3 (Supp.1996), "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." This court has defined what is "prospective" and "retrospective" law. In *Taniguchi*, "prospective" is defined as "effective or operative in the future." 114 Hawai'i at 47, 155 P.3d at 1148 (internal quotation marks, citation and brackets omitted). On the other hand, "retrospective" or "retroactive" is defined as "extending in scope or effect to matters that have occurred in the past." *Id.* (internal quotation marks and citation omitted).

"When interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes." *Weinberg v. City & County of Honolulu*, 82 Hawai'i 317, 322, 922 P.2d 371, 376 (1996) (quoting *Bishop Square Assocs. v. City & County of Honolulu*, 76 Hawai'i 232, 234, 873 P.2d 770, 772 (1994)) (internal quotation marks omitted). It is "well settled that *all statutes are to be construed as having only a prospective opera-*

*tion unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used.*" *Taniguchi*, 114 Hawai'i at 48, 155 P.3d at 1149 (emphasis added) (internal quotation marks and citations omitted). This court has concluded that "[t]he common law rule disfavors retroactive application of laws. This rule is codified in HRS § 1–3 (1993), which provides that '[n]o law has any retrospective operation, unless otherwise expressed or obviously intended.'" *Id.* (quoting *In re Medeiros Testamentary Trust & Life Ins. Trust*, 105 Hawai'i 284, 293, 96 P.3d 1098, 1107 (2004)); *see also Graham Constr. Supply Inc. v. Schrader*, 63 Haw. 540, 546, 632 P.2d 649, 653 (1981).

In the instant case, the Amendment did not on its face "expressly declare or necessarily imply a retrospective operation." *Taniguchi*, 114 Hawai'i at 48, 155 P.3d at 1149 (quoting *Robinson v. Bailey* 28 Haw. 462, 464 (1925)) (internal quotation marks, brackets, and citation omitted). The "Public Notice of Proposed Amendments to the Hawai'i County Charter" did not expressly contain an effective date of the Amendment.[3] Similarly, as the County argued, "[n]either does the legislative history of that ordinance [95–20] reflect any discussion concerning when the proposed [Amendment] would take effect or when it would become operative." The County further asserted that the "official explanation to voters [of the amendment] in the November 5, 1996 election failed to mention any date upon which the [Amendment] would take operative effect," except it indi-

---

**3.** The Public Notice contained the following explanations of the proposed Amendment, stating in relevant part:
DIGEST OF PROPOSAL 1[:]
 This proposal would limit the term of council members so that no council member may be elected for more than four consecutive two year terms. *If this proposal is passed, a council member may only be elected for four straight terms, thus serving a total of eight years in a row.* A council member may be elected for more than four terms as long as the terms are not consecutive.
BALLOT QUESTION 1[:]
 Council Terms. Should the term of council members be limited so that their terms may not exceed four consecutive two year terms?

PRESENT PROVISION:
 Presently Section 3–2 of the Hawai'i County Charter provides that council members are elected for two year terms with no limit on the number of terms that a council member may serve.
PROPOSED AMENDMENT:
 If approved, the County Charter would be amended to provide that the term of a council member *will* be limited to four consecutive two year terms or a total of eight years in a row. This amendment does not prevent a member from serving more than four terms as long as the terms are not consecutive.
(Emphases added.) (Capitalization in original.)

cated the Amendment would be effective in the future. *See also* Appendix C to County's Answering Brief, entitled "Public Notice of Proposed Amendments" (noting that under the "Proposed Amendment" section of Proposal 1, if the Amendment is approved, the "term of a council member *will* be limited"). "Will" is listed as "a *future-tense verb* [of shall]." *Black's Law Dictionary* 1407 (8th ed.2004) (emphasis added). "Shall" is defined as "[h]as a duty to; more broadly, is required to.... This is the mandatory sense that drafters typically intend and that courts typically uphold." *Id.* The language of the public notice and the absence of an effective date precluded retrospective application of the Amendment to include Arakaki's 1996 election in counting four consecutive terms.

### III.

Because there was no evidence of an intent to give the Amendment retrospective effect, the court correctly concluded that it must be prospectively applied. Prospective application of the Amendment meant it would apply to the 1998–2000 term,—*i.e.,* to those elected in the election following the 1996 election in which the Amendment was adopted—not to those elected in the same 1996 election. Holding otherwise gives the Amendment retrospective effect because it "extend[s the Amendment] in scope or effect to matters[, *i.e.,* the election process *for the 1996–1998 term,*] that ... occurred in the past."

### IV.

Accordingly, whether the Amendment became effective on November 5, 1996, the date of the election, or on November 25, 1996, the date of ratification, it could not justifiably cover Arakaki's election because his election process began before the Amendment was

voted on. Thus, during the period of Arakaki's candidacy, there was no term limits provision in effect for members of the Hawai'i County Council, none of the candidates were subject to such a provision, and the electorate was not informed that candidates in the 1996 election would be governed by that provision. Until the election was had on November 5, 1996 and/or certified on November 25, 1996, it was pure speculation as to whether the voters would approve the Amendment and, hence, whether term limits would ever apply to restrict eligibility for those offices up for election in 1996.

Consequently, the majority incorrectly dismisses Arakaki's contention that the Amendment should not apply to his 1996–1998 term because it "was not part of the 'election laws of the state' when [he] filed his nomination papers for the council seat in 1996." The Amendment was not the law *in effect* when Arakaki filed his nomination papers, campaigned for office, submitted himself to the voters for consideration of the 1996–1998 term, and was voted into office. Hence, applying the Amendment to his 1996 election would, in fact, give the Amendment retrospective effect. On this ground, Arakaki's position is decisive.

The majority posits that its application of the Amendment to the 1996 term "does not implicate the nomination process prior to the 1996 election or the 1996 election results." [4] Majority opinion at 366, 191 P.3d at 187 n. 9. To the contrary, the majority's approach manifestly implicates the 1996 nomination process and elections results inasmuch as it directly subjected the candidates who ran in the 1996 election to term limits conditions not in place at the time of the election process. To assert otherwise flies in the face of the nomination, campaign, and election process which preceded adoption of the Amendment.

---

4. The majority attempts to bolster this position by arguing that Arakaki was aware that his eligibility for office could be impacted as a result of the 1996 election because "[he] was an elected member of the Hawai'i County Council at all times relevant to this case" who "participated in all three readings of [the Amendment]" such that "[he] knew (1) of [the Amendment's] existence, (2) that it would be submitted to the county electorate for its approval in the 1996 election, and, (3) if approved by the county electorate and the results certified by the county clerk, that it would be effective on the date of its certification." Majority opinion at 366, 191 P.3d at 187 n. 9.

Respectfully, Arakaki's knowledge is not material to this appeal. Even assuming that he was aware of the proposed Amendment and that it would be submitted to the county electorate in the 1996 election, he had no way of knowing whether it would be approved or if the results would be certified.

Hence, the majority gives the Amendment the force and effect of law retrospectively to "matters that ... occurred in the past." *Taniguchi*, 114 Hawai'i at 48, 155 P.3d at 1149.

In other words, at the time candidates wishing to serve on the Hawai'i County Council for the 1996–1998 term had to file their nomination papers, there were no eligibility restrictions based on the number of consecutive terms a candidate had already served or on election to the 1996–1998 term. The Amendment imposing such term limits was not adopted until, at the earliest, the close of polls on November 5, 1996, or on November 25, the date of ratification. *See* discussion *infra*. Thus, if the Amendment is applied to the 1996–1998 term, its effect extends back to the nomination filing, ostensibly July 23, 1996, despite the fact that the 1996–1998 term did not begin until the first Monday of December after the election. Plainly, that would be an improper retroactive application of the Amendment, affecting the candidates and the electorate without any prior notice that the 1996 term was in fact subject to such a limitation.

Additionally, the position advocated by the majority creates uncertainty in the electoral process that could have a chilling effect on candidates' decisions to run for office. Allowing restrictions that were not in effect before or throughout the entire election process for the 1996–1998 term to be applied to service of that term simply because the restriction was deemed adopted before the term of office started (but not before the election for that term) violates legal principles disfavoring retroactive application. The

approach adopted by the majority could inhibit vigorous political participation in the future and places similar elections under a cloud of uncertainty.[5]

## V.

Second, I believe the Amendment could not be *enforced* as of November 5, 1996, the date of the election, because the vote had yet to be certified. The majority apparently agrees. Majority opinion at 365, 191 P.3d at 186 (citing HRS § 50–11,[6] to the effect that the Amendment "became effective on November 25, 1996, which is the day that the Amendment was 'ratified' by a 'majority of the electors voting on the amendment'"). According to the majority, ratification is defined as "an 'adoption *or enactment*, [especially] *where the act is the last in a series of necessary steps or consents. In this sense, ratification' includes 'a formal approval of a constitutional amendment.'*" *Id.* at 364, 191 P.3d at 185 (quoting *Black's Law Dictionary* at 1289) (emphases added) (brackets and ellipses omitted). Applying this definition to the facts here, the majority agrees "the last in a series of necessary steps," *id.*, and the "formal approval" was the *certification* by the Hawai'i County Clerk and State Chief Elections Officer on November 25, 1996, that a "majority of the electors voting on the amendment ... cast their ballots in favor of adoption." HRS § 50–11.

### A.

#### 1.

The majority, like Appellants, relies on this court's conclusion in *In re Marques*, 37 Haw.

---

5. If a potential candidate is aware that an amendment has been proposed, which, if passed, would render him or her ineligible to hold office, that person may be reluctant to compete for that office. That, in turn, would unduly infringe on the constitutional right to vote for the candidate of one's choice. *Hayes v. Gill*, 52 Haw. 251, 267, 473 P.2d 872, 882 (1970) ("The right to run for elective office and right to vote for candidates running for such office uphold a fundamental principle of our representative democracy which is, in Alexander Hamilton's words, quoted by Mr. Chief Justice Warren, 'that the people should choose whom they please to govern them.'" (Quoting *Powell v. McCormack*, 395 U.S. 486, 547, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).)).

6. HRS § 50–11 reads:

Every charter established under this chapter shall provide means by which the charter may be amended or revised. The provisions for amendment and revision must provide for approval of all amendments and revisions by referendum to the electors of the county. *The amendment or revision shall be considered ratified if a majority of the electors voting on the amendment or revision cast their ballots in favor of adoption.*

(Emphasis added.) This statute was cited only by the majority. Neither party cited this statute in their briefs.

260, 268 (1945), that "an Act of the legislature" with "no implication or expression therein that the Act itself should be postponed, ... takes effect upon approval[.]" Majority opinion at 365, 191 P.3d at 186 (quoting *In re Marques,* 37 Haw. at 268). Based on *In re Marques,* Appellants argue that the Amendment was effective on the date of approval by voters at the November 5, 1996 general election, stating, "It is the black-letter law that amendments to charters 'take effect from the date of their approval by the people.'" (Quoting 2A Eugene McQuillin, *The Law of Municipal Corporations,* § 9:30 (3d ed.2006).) Appellants further assert that "[a] presumption arises that an amendment is effective on the date of the vote." (Citing *Druggan v. Anderson,* 269 U.S. 36, 39, 46 S.Ct. 14, 70 L.Ed. 151 (1925).)[7] However, the effective date of the amendment says nothing about whether the effect given the amendment would be retrospective or not in any given case.

Furthermore, *In re Marques* did not concern the retroactive application of a statute. The Act being construed in that case had an effective date of June 1, 1939, which was expressly or impliedly applicable to only some of the provisions. *In re Marques,* 37 Haw. at 267–68 (footnotes omitted). The other provisions had no express effective date. *Id.* at 268. This court held that the provisions which were expressly or impliedly delayed would go into effect on June 1, 1939, and the other provisions would become effective when the governor signed the Act. *Id.* It is manifest that *In re Marques* is distinguishable. In that case the governor's signature was not subject to a certification requirement, the law-adoption process being distinctly dissimilar between a law adopted by the legislature and one adopted directly by the people and in *In re Marques* the question of retroactive application was not in issue.

### 2.

Moreover, HRS § 50–11 only indicates that "*if* a majority of the electors ... cast their ballots in favor," then by a vote of the majority the amendment is adopted. The provision does not indicate *when* the amendment is to become effective. The term "if" is defined as, *inter alia,* "in the event that," or "on the condition that." *Merriam Webster's Collegiate · Dictionary* 576 (10th ed.1994). Accordingly, giving "if" its ordinary meaning, the relevant portion of HRS § 50–11 reads in effect that "[t]he amendment or revision shall be considered ratified [in the event that] a majority of the electors voting on the amendment or revision cast their ballots in favor of adoption." Ratification or "formal approval" in the statute does not refer to *when* the Amendment became effective, but *under what circumstances, i.e.,* a majority vote, the council's proposal can be considered adopted by the people. Consequently, only "in the event that" a majority of the electors vote in favor of the proposition, would the Amendment proposal pass under HRS § 50–11.

### B.

In that connection then, the majority also apparently agrees that it was not until the results of the election were certified that the Amendment became official. This is manifest from the statutorily mandated text of the certification itself. Pursuant to HRS § 11–156 (1993),[8]

> The ... county clerk in county elections *shall issue certificates of results* where a question has been voted upon.... The certificate of election shall be substantially in the following form:
>
> ....

### CERTIFICATE OF RESULTS

I, ........................, chief election officer (county clerk) of Hawai'i (coun-

---

7. Arakaki and the County did not directly address this argument, but instead, contend that the Amendment itself was void due to the lack of an effective date. However, insofar as this argument is premised on Hawai'i County Charter § 15–3, which applies only to amendments proposed pursuant to a mandatory charter review, this argument cannot be supported.

8. HRS § 11–156 is applicable to the election at issue here pursuant to Hawai'i County Charter § 13–27 (1991), entitled "County Election," which provides, in pertinent part, that "[c]ounty elections shall be conducted in accordance with the election laws of the state insofar as applicable."

ty), do hereby certify that ................. (question) was on the ..... day of ............... 19....., *duly adopted (rejected) by a majority of the votes cast.*

........................

Chief Election Officer (County Clerk)

(Emphases added.) The word "shall" is generally interpreted as a command, rather than a suggestion or direction.

As used in statutes, contracts, or the like, [shall] is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term "shall" is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means "must" and is inconsistent with a concept of discretion.

*Leslie v. Bd. of Appeals of County of Hawaii,* 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006) (quoting *Black's Law Dictionary* 1375 (6th ed.1990)) (emphasis omitted). Accordingly, HRS § 11–156 mandates that, *after the election,* the county clerk is required to certify the results of the vote on a charter amendment. Until the Certificate of Results is issued, the effect of such amendment is not established. Consequently, in the instant case, where the results of the election were not certified until November 25, 1996, it cannot be concluded that the Amendment adopting term limits for members of the County Council although voted on on November 5, 1996, applied to those elected to office on the same date, November 5, 1996, as of that date.

Similarly, regarding elections, the Hawai'i Legislature recognizes that an election is not complete and candidates for public office are not officially declared as being elected until the results of an election are certified. *Cf. Rose v. Trask,* 27 Haw. 596, 596–97 (Terr.1923) (under the Territorial election law, Municipal Act § 1695 pertaining to election contests, "if the court shall decide which candidate or candidates have been elected[,] a copy of such judgment shall be served on the city and county clerk, who shall sign and deliver to such candidate, or candidates[,] *certificates of election, and the same shall be conclusive of the right of the candidate or*

*candidates to the office"* (emphasis added)). According to HRS § 11–155 (1993),

[o]n receipt of certified tabulations from the election officials concerned, *the chief election officer or county clerk in county elections shall compile, certify, and release the election results after the expiration of the time for bringing an election contest. ... The position on the question receiving the appropriate majority of the votes cast shall be reflected in a certificate of results* issued pursuant to section 11–156.

(Emphases added.) Thus, the adoption or rejection of a proposed charter amendment is not made official until the County Clerk has "compile[d], certif[ied], and release[d]" the election results, indicating which "position on the question receiv[ed] the appropriate majority of votes cast. . . ."

Relatedly, HRS § 11–156 mandates that "[t]he chief election officer or county clerk shall issue certificates of results where a question has been voted upon." In that connection, HRS § 11–155 requires that "a certificate of results declaring the results of the election as of election day shall be issued pursuant to section 11–156." The purpose of this provision is to "clarify when the results of an election are effective and to provide for the issuance of a 'certificate of results' when a question is voted upon." Hse. Conf. Comm. Rep. No. 54–86, in 1986 House Journal, at 941. By providing for a Certificate of Results related to questions or propositions submitted to the electors, the legislature has clarified that the adoption or rejection of such questions is not definitively confirmed until the votes are tabulated and the results certified by the County Clerk. *See* HRS § 11–156.

In this case, the results of the election were certified by the County Clerk and the State of Hawai'i Chief Elections Officer on November 25, 1996. Only then, pursuant to HRS §§ 11–155 and –156, was the adoption of the Amendment made official. Therefore, the Amendment could not have been enforced on November 5, 1996 with respect to Arakaki's 1996 election because the adoption process was not complete on November 5, 1996, but was subject to certification as "the

last in a series of necessary steps." *Black's Law Dictionary* at 1229.

### VI.

In light of the forgoing, the Amendment should be applied prospectively, effective as of the 1998 term. Term limits ratified by voters in the same general election in which incumbents are elected should apply to the next election cycle. To hold otherwise, as in Arakaki's case, wrongfully gives the Amendment retrospective effect. Elections are not officially complete until results are certified. Thus, the Amendment should not apply to candidates who are running in the same election in which the Amendment is voted upon. Therefore, contrary to the majority, I would affirm the court's holding.