*438 DECISION
PER CURIAM.[1]
INTRODUCTION
This Court must determine whether the Trial Court correctly granted the appel-lees’ motion for a directed verdict. The Trial Court mistakenly required the appellant to satisfy a factual burden of proof in order to validate a proffered legal interpretation. This Court overturns the lower court decision, and provides its interpretation of the constitutional legislative term limits provision.
APPELLATE HISTORY
On April 8, 2013, the appellant, Robert Two Bears, appearing pro se, filed a timely appeal of the Trial Court’s final decision. See HCN R.App. P. 7(a); HCN R. Civ. P. 80(A)(1), available at http://www.ho-chunknation.com/?PageId=123. This Court issued a scheduling order on April 10, 2013, in which it accepted the appeal and established briefing deadlines.[2] HCN R. Civ. P. 80(B). The appellees, Ho-Chunk Nation Election Board and Election Board Chairperson Judy Whitehorse, by and through Attorneys Heidi A. Drobnick and William F. Gardner, filed a timely response brief on April 15, 2013. The appellees also urged the Court to rescind its acceptance of the appeal due to an alleged service deficiency.
On April 16, 2013, Attorney James C. Ritland filed a notice of appearance on behalf of the appellant. Subsequently, on April 23, 2013, the appellant responded to the appellees’ motion to vacate the grant of certiorari,[3] and he addi *439 tionally sought permission to file a reply brief.[4] The Court convened oral argument on April 27, 2013, at 10:30 a.m. CDT. The deadline to enter a final decision extended by eleven (11) days due to the appointment of a pro tempore justice. Id., Rule 80(D); see also HCN Leg. Res. 04-23-13J; Recusal Order, SU 13-02 (HCN S.Ct., Apr. 12,2013).
FACTUAL BACKGROUND
On October 11, 2003, the Ho-Chunk Nation General Council voted to include constitutional legislative term limits. Gen. Council Res. 10-11-03R (882 in favor, 289 in opposition, 242 abstaining), available at http://www.ho-chunknation. com/?PageId=235;[5] see also HCN Const., art. IV, § 3(a, c, f). The resolution reads, in relevant part, as follows:
NOW THEREFORE BE IT RESOLVED that the General Council hereby approves for Secretarial Election, an amendment to the Ho-Chunk Nation Constitution, Article V, Section 6, Terms of Office, Members of the Legislature [sic] terms shall not exceed two (2) consecutive terms effective October 11, 2003.
Gen. Council Res. 10-U-03R at 2.[6] On September 12, 2009, the General Council voted to reaffirm its earlier action. Gen. Council Res. 09-12-09E; see also 2009 Annual Gen. Council Held at Ho-Chunk Casino Convention Ctr., Hocak Worak, Sept. 25, 2009, at 12, available at http://ho-chunknation.eom/?PageId=39.
The amending language was ultimately presented to the voters in an August 14, 2012 Secretarial Election, and identified as Proposed Amendment B. Secretarial Election 2012, Hoopi Worak, July 13, 2012, at 12-13. Following ratification, the constitutional provision entitled, “Terms of Office,” incorporated the below highlighted portions, which do not substantively differ from the proposed changes appearing within the 2009 resolution.
Members of the Legislature shall serve four (4) year terms not to exceed, two (2) consecutive four (b) year terms, which shall be staggered, unless the Legislator’s first term if filling a vacancy under Article IX of Constitution, it will not count as a term, for purposes of this section. Legislators shall represent *440 their respective Districts until their successors have been sworn into office except if the Legislator has been successfully removed or recalled in accordance with this Constitution. Members of the Legislature shall be elected by a majority vote of the eligible voters from their respective Districts.
HCN Const., art. V, § 6 (emphasis added); see also id., art. XIII, § 1. The appellees interpret the provision as applying in a purely prospective manner, meaning that the restriction could not become effective until 2021. Order (Final J.), CV 13-04 (HCN Tr. Ct, Apr. 4, 2013) at 7.
Two (2) full consecutive legislative terms have nearly lapsed since the passage of the first resolution in October 2003. The General Election in 2005, occurred on Tuesday, June 7, 2005, resulting in a swearing-in ceremony held on Wednesday, July 6, 2005. Id., art. VIII, §§ 1, 8. The legislative seats filled within the election would have expired in 2009. The General Election in 2009, occurred on Tuesday, June 2, 2009, resulting in a swearing-in ceremony held on Wednesday, July 1, 2009. These legislative terms will expire when “successors have been sworn into office” on or after Wednesday, July 3, 2013. Id., art. V, § 6.
Legislators Gregory A. Littlejohn and Douglas O. Greengrass, appellee-interve-nors, have continuously served in legislative office since at least 2005. Legislator James C. Greendeer, appellee-intervenor, has continuously served in legislative office since at least 2009. Former Legislator Kathyleen V. Lonetree-Whiterabbit, appellee-intervenor, has not served in legislative office since 2011. Order (Mot. Hr’g), CV 13-04 (HCN Tr. Ct., Mar. 29, 2013) at 6-7.
DECISION
This Court possesses the constitutional authority “to interpret and apply the ... laws of the Ho-Chunk Nation,” and may render binding “conclusions of law.” HCN Const., art. VII, §§ 4, 7(a). When reviewing questions of law, the Court employs a de novo standard of review, meaning that it examines a matter anew. Hope B. Smith v. Ho-Chunk Nation et al., SU 03-08 (HCN S.Ct., Dec. 8, 2003) at 5 n. 3. The appellees contend that the Court should avoid engaging in constitutional interpretation, and insist that the Trial Court properly dismissed the election challenge due to the appellant’s inability to satisfy a statutory burden of proof.
Specifically, the appellees assert that the appellant did not “prove by clear and convincing evidence that the Election Board violated th[e] Election Code ... or otherwise conducted an unfair election.” 2 HCC § 6.18b, available at http://www.ho-chunknation.com/?PageId=959. The Election Code incorporates the amended constitutional legislative term limits provision, and the appellant disagrees with the Election Board’s interpretation of the amendment. Id., § 6.6zz(e)(2)(ii) (quoting HCN Const., art. V, § 6). Indisputably, the modifying language is ambiguous regarding its application. The provision does not include an effective date, and the extent of retroactivity, if any, is at first blush largely debatable.
The appellees fault the appellant for his failure to cite and analogize to foreign case law, but such law constitutes persuasive, not binding, authority. “[Ojnly decisions by this [Cjourt are limitations on the Trial Court.” Jacob LoneTree et al. v. Robert Funmaker, Jr. et al., SU 00-16 (HCN S.Ct., Mar. 16, 2001) at 4. Somewhat similarly, the appellees criticize the appellant’s omission of any constitutional history, including presumably post hoc and inherently unsound testimony of individual *441 General Council participants or secretarial election voters. Yet, these varied resources do not represent evidence capable of satisfying the preceding statutory factual burden of proof. The Court instead could conceivably resort to such material for assistance in ascertaining probable intent behind a constitutional modification.
In this instance, the statutory burden is simply inapposite, and it must yield to this Court’s primary constitutional obligation to interpret the law. The Election Board has violated the Election Code to the extent it improperly interpreted and applied the law. The appellant cannot logically unearth clear and convincing factual evidence to support a proposed legal interpretation of the legislative term limits provision. The Court must engage in constitutional interpretation, which is detached from the factual inquiry appearing within the Election Code’s challenge provision.
At trial, the Trial Court granted the appellees’ motion for a directed verdict, holding that the appellant failed to satisfy his statutory burden of proof. Order (Final J.) at 1, 6, 9, 11, 14. As a result, the appellees correctly surmised that the remainder of the underlying judgment generally regarding retroactivity, and associated proscriptions against ex post facto laws and bills of attainder, constitutes dicta,. Id. at 12-14; see also HCN Const., art. X, § 1(a)(9). This Court deems that the use of a factual burden to resolve a question of law proved unwise and unwarranted. This Court must necessarily proceed to squarely address the appropriate application of the term limits provision.
To begin, this Court has determined that a member does not possess a fundamental right to be considered a candidate for tribal public office. Dallas White Wing v. HCN Election Bd. et al., SU 07-09 (HCN S.Ct., June 4, 2007) at 7. The legislative term limits provision, therefore, must only overcome a rational basis review when subjected to an equal protection analysis. HCN Const., art. X, § 1(a)(8). In this regard, “ ‘[t]he universal authority is that restriction upon the succession of incumbents serves a rational public policy and that, while restrictions may deny qualified men [and women] an opportunity to serve, as a general rule the over-all health of the body politic is enhanced by limitations on continuous tenure.’ ” Legislature v. Eu, 54 Cal.3d 492, 520, 286 Cal.Rptr. 283, 816 P.2d 1309 (Cal.1991), cert. denied, 503 U.S. 919, 112 S.Ct. 1292, 1293, 117 L.Ed.2d 516 (1992) (citation omitted).
The more difficult task becomes discerning the proper application of the constitutional provision. No party has advocated a strict retroactive approach, which would have hypothetically required the removal of sitting legislators upon ratification of the amendment, provided that such individuals had already served two (2) consecutive full terms. Nonetheless, the Election Board confusingly justifies its purely prospective approach on the grounds that it has never required the immediate removal of a sitting elected official in response to a constitutional amendment’s passage. The Election Board’s attempt to demonstrate consistency in connection with its application of constitutional amendments is clearly misplaced, and the Trial Court’s acceptance of this rationale is perplexing. Order (Final J.) at 7-8, 13-14.
Every party agrees that the constitutional amendment’s direct impact does not become evident until the conclusion of the legislative terms that began in 2009. The appellant argues that a legislator’s prior service may restrict him or her from continuing in such capacity regardless of the outcome of the 2013 general election. In other words, the Election Board should not *442 have certified a sitting legislator who occupied his or her office for two (2) consecutive terms beginning in 2005, as a candidate. The appellees conversely argue that the absence of a retroactivity clause within the constitutional amendment only permits a prospective consideration of legislative service, i.e., the 2013 legislative term would represent the first term implicated by the amendment. Presuming the continued validity of the term limit restriction, a legislator would not be prohibited from seeking a third consecutive term until the 2021 general election.
On its face, the constitutional amendment is ambiguous inasmuch as it lacks an express starting date. Many states have enacted term limit provisions affecting federal congressional and state legislative seats, and in most instances the enabling legislation directly addressed the question of prospective or retroactive application. See, e.g., U.S. Term Limits. Inc. v. Hill, 872 S.W.2d 349, 360-361 (Ark.1994), aff'd, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) (canvassing the varied state experiences).[7] However, when courts encounter term limit amendments that do not indicate when to commence counting terms of office, they typically begin by noting a presumption against retroactivity. For example, a constitutional amendment “will not be construed as retroactive when it may be reasonably construed otherwise.” Id. at 361; see also Clark v. Arakaki, 118 Hawaii 355, 191 P.3d 176, 186 (2008) (“ ‘No law has any retrospective application, unless otherwise expressed or obviously intended.’ ”).
While this general presumption seems to lend some clarity, countervailing doctrines erode any possibility of an easy answer. For instance, courts “construe constitutional amendments liberally to accomplish their purposes.” Hill, 872 S.W.2d at 361. Significantly, an analysis of purpose inevitably leads to an effort to uncover the intent of the draftsperson and/or electorate. “If a constitutional provision’s language is ambiguous, meaning that it is susceptible to ‘two or more reasonable but inconsistent interpretations,’ we may look to the provision’s history, public policy, and reason to determine what the voters intended.” Miller v. Burk, 124 Nev. 579, 188 P.3d 1112, 1120 (2008).
The history of the Ho-Chunk term limits provision begins in 2003, and the draft-sperson(s) expressly intended that the amendment become effective as of the date of the October 11, 2003 General Council. An overwhelming majority of the General Council approved the request for a constitutional amendment, but, for reasons unknown, a secretarial election did not materialize. The General Council instead readdressed the matter six (6) years later, resulting in the same outcome. The proposed amendment did not reach a ballot until August 14, 2012, nearly nine (9) years after initial consideration and approval.
A constitutional interpretation that would impose the legislative candidacy restriction almost eighteen (18) years after its proposal simply strains credulity. More importantly, the Ho-Chunk process markedly differs from its state counterparts in at least one respect. The General Council announced binding policy when it passed the two (2) resolutions in question. HCN Const., art. IV, § 3(a, f). To be sure, the policy supporting legislative term limits could not, and did not, automatically add a further legislative qualification. A *443 secretarial election needed to occur in order to potentially codify the legitimate policy choice of the General Council.
Still, the appellee-intervenors can hardly assert a lack of notice or forewarning. The Legislature, while not constitutionally obligated, could have independently requested a secretarial election to incorporate the twice articulated binding policy of the Nation. Id., art. XIII, § 2. Such an approach may not have achieved a more immediate result, but the history of the term limit provision could have been different.
In reviewing a state elective office term limit provision, the Nevada Supreme Court offered the following clarification:
[W]e recognized that “just because a statute draws upon past facts does not mean it operates ‘retrospectively.’ Instead we noted “ ‘[a] statute has retroactive effect when it “takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.” ’ ” In determining whether the law’s application would be impermissi-bly retrospective, “courts are guided by fundamental notions of ‘fair notice, reasonable reliance, and settled expectations.’ ”
Miller, 188 P.Bd at 1121 (citations omitted). The appellee-intervenors would unquestionably struggle demonstrating an absence of fair notice, and could not legitimately claim reasonable reliance or settled expectations upon pre-2012 law, which ran contrary to binding policy for almost nine (9) years. Even further, the Constitution imparts only a privilege to run for public office and not a right justifying reliance. Supra p. 441. Moreover, the appellee-in-tervenors either knew or should have known about the two (2) requests for a secretarial election. The appellant had no obligation to establish this intuited knowledge though testimony or otherwise.
The Court hereby interprets the constitutional amendment to apply prospectively, taking effect with the 2012 general election. For purposes of its application, the Election Board shall begin counting consecutive four-year legislative terms beginning in 2005, to determine whether a legislative candidate is hereafter restricted from seeking a third consecutive term. This interpretation of the constitutional legislative term limits provision more appropriately represents the intent of the General Council, and clearly conforms to the intent of the original draftsperson(s). No member has a constitutionally protect-able right to run for tribal elective office, and the consideration of past legislative terms in conjunction with the amendment does not run afoul of any other rights.
In conclusion, the Election Board should not have sanctioned the participation of Legislators Littlejohn and Greengrass as candidates in the general primary election. Since the Court is invalidating the election results, the Election Board must conduct a special election to fill the expiring legislative seats of incumbent Legislators Little-john and Greengrass. 2 HCC § 6.18d. The Election Board must accordingly cancel the general run-off election involving Legislator Greengrass and reverse its pronouncement regarding Legislator Little-john. This ruling does not impact the scheduled run-off election for the remaining legislative seats. Consequently, Legislator Greendeer and Kathyleen V. Lone-tree-Whiterabbit may continue to run for election.
OVERTURNED
EGI HESKEKJET.

. Justices Dennis M. Funmaker, Sr. and Paul W. Stenzel, sitting by pro tempore appointment, join in the opinion.

. The Court granted the appellant’s request to consider his notice of appeal as the initial brief, resulting in a five-day responsive brief filing deadline. HCN R. Civ. P. 80(B)(2).

. A member does not need to name an official as a party defendant in an election challenge. HCN Const., art. VIH, § 7, available at http:// www.ho-chunknation.com/?PageId=294; see also, e.g., Debra C. Greengrass v. HCN Election Bd., SU 99-03 (HCN S.Ct., June 30, 1999). The election challenge rules require an appellant “to file[] and serve! ]” his or her notice of appeal within three (3) calendar days of the issuance of the Trial Court final decision, and further require that a certificate of service “accompany’’ the notice. HCN R. Civ. P. 80(A)(1, 3). The corresponding appellate procedural rule similarly requires service upon the other parties with proof of service "promptly filed with the Court.” HCN R. App, P. 11(c). Neither rule prescribes the manner of service, and neither rule mandates that service simultaneously occur with filing. Regardless, due process considerations warrant timely and appropriate service, especially given abbreviated election challenge time-frames. HCN Const., art, X, § 1(a)(8). The Court has previously rejected appeals when confronted with an abject failure to provide timely service of process. Henry White Thun *439 der v. Eau Claire County, SU 01-15 (HCN S.Ct., Dec. 8, 2001) (failing to file proof of service after the passage of twenty-three (23) days and notification of the deficiency); Nina Garvin v. Carol Laustrup et al., SU 99-04 (HCN S.Ct., July 7, 1999) (failing to either file proof of service or attempt service until at least fourteen (14) days after filing the notice of appeal). In the instant case, a certificate of service accompanied the notice of appeal, and the appellant contemporaneously served the Election Board by interoffice mail. Two (2) of the defendant-intervenors contested receipt of the notice of appeal, but each intervening party voluntarily joined in the brief and oral argument of the institutional appellees. In this regard, the Election Board submitted a timely responsive brief, and did not request an extension of time in which to do so. The Court, therefore, proceeded to entertain the merits of the appeal.

. Despite the clarity of the relevant rule, the Court introduced a degree of ambiguity into the equation when it partly misidentified the party responsible for filing the response brief. J. (Accepting Appeal & Scheduling Order) at 2 n. 4. Consequently, the Court opted to consider the appellant’s reply brief.

. The Court permissibly and necessarily takes judicial notice of the official actions of the General Council. HCN R. Civ. P. 31(A)(5).

. The resolution's author(s) presumed that passage of the measure would automatically trigger the calling of a secretarial election by the Secretary of the Interior. Id. at 2 (quoting HCN Const., art XIII, § 2). No such election directly transpired after the 2003 General Council.

. In Hill, the United States Supreme Court ruled that a state may not impose additional qualifications for federal congressional office. States remain free to impose term limits upon state legislative officeholders.